UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61988-CIV-ALTMAN/Hunt

**MICHAEL FLOYD**,

    Plaintiff,

v.

**BROWARD COUNTY
SHERIFF'S DEPARTMENT, et al.**,

    Defendants.

_____/

# ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Judgment on the Pleadings [ECF No. 65] and the Plaintiff's Motion to Amend Complaint [ECF No. 68]. The Court has carefully reviewed these Motions, the parties' other filings, the record, and the applicable law. For the reasons that follow, the Court will deny the Plaintiff's Motion to Amend, grant the Defendant's Motion for Judgment on the Pleadings *as to the Plaintiff's federal claims*, and decline to exercise supplemental jurisdiction *over the Plaintiff's state-law claims*.

## The Facts

On August 22, 2018, the Plaintiff, Michael Floyd, brought this action for damages under 42 U.S.C. § 1983 against the Broward County Sheriff's Department (the "Department") and an indeterminate number of "John Doe" deputy officers employed by that Department. Compl. [ECF No. 1]. On January 2, 2019, the Honorable Cecilia M. Altonaga granted the Plaintiff's Motion to Amend Complaint. [ECF No. 19]. The next day, the Plaintiff filed an amended § 1983 complaint against Broward County Sheriff Scott Israel and the John Doe officers. Am. Compl. [ECF No. 20].

On January 9, 2019, Judge Altonaga entered a Scheduling Order that required the parties to file all motions to amend pleadings, or to join parties, by February 20, 2019. [ECF No. 32] at 1.

On January 21, 2019, again with the Court's leave, the Plaintiff filed a Second Amended Complaint ("SAC") against Sheriff Israel and the John Doe officers. *See* SAC [ECF No. 39]. This SAC remains the operative pleading in the case. In the SAC, the Plaintiff alleges that he was arrested and held in custody at the Broward County Main Jail's Central Intake, where some of the John Doe officers handcuffed, shackled, punched, kicked, and pepper sprayed him. *Id.* at 3–4. Some other John Doe officers allegedly failed to intervene to stop this attack and, as such, deprived him of necessary medical care. *Id.* at 8–9. Regarding the John Doe officers' identities, the SAC says only that "Plaintiff is ignorant of the true name and capacities of defendants sued here as John Doe officers, inclusive and therefore sues said defendants by such fictitious names. Plaintiff will amend the complaint to allege true names and capacities when ascertained." *Id.* at 2.

In total, the SAC asserts five causes of action against all of the Defendants: Counts I and II make claims for state-law battery and assault, respectively; Count III alleges excessive use of force, in violation of 42 U.S.C. § 1983; Count IV alleges deliberate indifference to medical needs, also in violation of 42 U.S.C. § 1983; and Count V contends that the Defendants failed to intervene and stop the constitutional violations described in Counts III and IV. *Id.* at 5–9. With respect to Sheriff Israel, the SAC avers that the Plaintiff's incarceration occurred "while under the supervision of Scott Israel," *id.* at 4, and thus concludes that Sheriff Israel "is liable for [the Department's] custom and practices of permitting and encouraging such acts," *id.* at 1. Critically, the SAC contains *no other factual allegations* about Sheriff Israel.[1]

---

[1] Although each Count refers to Sheriff Israel only in his official capacity, *see* SAC at 5–9, the SAC states elsewhere that "Plaintiff sues all defendants in their individual capacities," *id.* at 2.

2

On February 21, 2019, Judge Altonaga granted a motion by Sheriff Israel to strike the SAC's claims, in Counts I and II, for punitive damages. [ECF No. 54]. In that same order, Judge Altonaga dismissed the John Doe officers without prejudice after concluding that "Plaintiff has failed to perfect service on them at any point since the initial Complaint was filed on August 22, 2018, nor has he sought to discover their identities with any discovery propounded upon Scott Israel or third parties." *Id.* Notably, this order was entered after the Court's February 20, 2019 deadline to amend pleadings, or to join parties, had expired. On April 11, 2019, Judge Altonaga transferred this case to the undersigned [ECF No. 55].

On June 13, 2019, the Court held a status conference. *See* [ECF No. 62]. During that status conference, counsel for the Plaintiff raised an *ore tenus* motion to amend the complaint for a third time—this time, to include the John Doe officers' names and to re-join them as parties to the action. The Court, noting both Judge Altonaga's dismissal of the John Doe officers and the expiration of the amendment deadline, told Plaintiff's counsel that his motion would be granted only upon a showing of "good cause." *See* Fed. R. Civ. P. 16(b)(4). In response, counsel explained that he had only recently obtained the officers' names through discovery. When pressed by the Court, however, counsel acknowledged that he had _not_ sought discovery on the officers' identities prior to the expiration of the February 20th amendment deadline. The Court found that counsel had failed to furnish "good cause" to reopen the long-expired deadline and denied the motion without prejudice.

Two weeks later, on June 27, 2019, Sheriff Israel, the only remaining Defendant, moved under Fed. R. Civ. P. 12(c) for a judgment on the pleadings. Mot. for Judgment on Pleadings [ECF No. 65]. On August 7, 2019, the Plaintiff filed a motion for leave to file a Third Amended Complaint. *See* Mot. to Amend [ECF No. 68]. The Motion to Amend attaches a proposed Third

Amended Complaint, which identifies the John Doe officers by name. Both motions are now fully briefed and ripe for resolution.

## The Law

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and must construe them in the light most favorable to the plaintiff. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient, standing alone, to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## Analysis

**I. The Plaintiff's Motion to Amend**

In his Motion to Amend, the Plaintiff asks the Court to modify its January 9, 2019 Scheduling Order, which established February 20, 2019 as the deadline for the parties to amend their pleadings or to join other parties.[2] *See* Fed. R. Civ. P. 16(b)(3)(A). This deadline "may be

---

[2] The undersigned entered an Amended Scheduling Order on May 2, 2019, but did not modify Judge Altonaga's February 20th amendment deadline. *See* [ECF No. 57] at 1. In fact, under the express terms of that Amended Scheduling Order, all un-modified dates—like the Original Scheduling Order's February 20th amendment deadline—remained in place. *Id.* at 1 n.1.

modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). But, despite Rule 16's unambiguous admonition, the Plaintiff's Motion to Amend—filed more than five months after the February 20th deadline expired—makes no attempt to show any "good cause" for the modification it seeks.

Recognizing that he cannot establish "good cause," the Plaintiff attempts to circumvent the "good cause" requirement by asking the Court to follow the more lenient standard of Fed. R. Civ. P. 15(a)(2)—which suggests that courts "should freely give leave [to amend a pleading] when justice so requires." *See* Mot. to Amend at 1–2. But the Plaintiff cannot escape the "good cause" requirement of Rule 16 by invoking Rule 15(a). Where, as here, a motion to amend is "filed after the scheduling order's deadline, [the movant] must *first* demonstrate good cause under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (emphasis added). The Plaintiff has pointed to no such "good cause," and the Court can discern none from the record. Indeed, Plaintiff's counsel has already conceded in open court that he conducted no discovery on the identities of the John Doe officers prior to the deadline's expiration. It is well-settled that the Plaintiff's indolence—or negligence—in this regard cannot satisfy the strictures of Rule 16. *See, e.g.*, *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir. 1991) (per curiam) (good cause exists "only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevented service"). Accordingly, the Court hereby **DENIES** the Plaintiff's Motion to Amend.

## II. The Plaintiff's § 1983 Claims (Counts III, IV, and V)

With the John Doe officers out, the Plaintiff's only remaining § 1983 claims are against Sheriff Israel. In his Motion, Sheriff Israel argues that the SAC's scant allegations against him are legally insufficient to state a cause of action under § 1983. Mot. for Judgment on Pleadings at 7–

5

9. Other than requesting leave to amend the SAC "to add John Doe defendants and to allege further custom and practice of the [Department's] officers with respect to the use of excessive force," *see* Resp. [ECF No. 66] at 5–6, the Plaintiff offers little argument in response to this point.[3]

The Court agrees with Sheriff Israel that the SAC fails to state a § 1983 claim against him. The SAC's assertion that Sheriff Israel "is liable for [the Department's] custom and practices of permitting and encouraging [the John Doe officers'] acts," SAC at 1, is a bare legal conclusion entitled to no weight. *See Iqbal*, 556 U.S. at 679. And the SAC's only other pertinent allegation— that the Plaintiff's incarceration was "under the supervision of Scott Israel," SAC at 4—is simply insufficient to create liability under § 1983. As the Eleventh Circuit has explained:

> It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and internal quotation marks omitted). On its face, the SAC fails to allege either (1) Sheriff Israel's personal participation in

---

[3] The Court declines to consider the collection of news articles the Plaintiff has filed, *see* [ECF No. 66-1], because considering them would require the Court to convert Sheriff Israel's Motion for Judgment on the Pleadings into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *Carbone*, 910 F.3d at 1351. The Court finds this conversion unnecessary here, where the pleadings are themselves dispositive of the remaining legal questions. *See Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

any alleged unconstitutional conduct or (2) a causal connection between Sheriff Israel's actions and any such unconstitutional conduct. Because liability under § 1983 cannot attach solely because of Sheriff Israel's supervisory role, the SAC fails to state a § 1983 claim against him. Accordingly, the Court hereby **GRANTS** the Sheriff's Motion for Judgment on the Pleadings and **DISMISSES** Counts III, IV, and V **with prejudice**.

### III. The Plaintiff's State-Law Claims (Counts I and II)

The Plaintiff's § 1983 claims were the only mechanism by which the Court could exercise original jurisdiction over this case. Without those claims, the SAC is left with nothing more than two state-law claims—Counts I and II—between two Florida residents.

A district court may decline to exercise supplemental jurisdiction over a state-law claim where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) (establishing these factors). The power to hear cases via pendent jurisdiction "need not be exercised in every case in which it is found to exist." *Gibbs*, 383 U.S. at 726. As the Supreme Court has said, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Id.* "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*; *accord Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."). The Court will follow the Supreme Court's admonition

and decline to exercise its discretionary jurisdiction over the parties' remaining state-law claims here.[4]

In sum, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the Plaintiff's state-law claims (Counts I and II) and hereby **DISMISSES** those claims—without prejudice, of course, to the Plaintiff's ability to refile those claims in state court. *See Vibe Micro*, 878 F.3d at 1296.

### Conclusion

For the foregoing reasons, the Court hereby **ORDERS AND ADJUDGES** that the Plaintiff's Motion to Amend Complaint [ECF No. 68] is **DENIED**; the Defendant's Motion for Judgment on the Pleadings [ECF No. 65] is **GRANTED** as to the Plaintiff's federal claims, which are **DISMISSED with prejudice**; and the Plaintiff's state-law claims are, pursuant to 28 U.S.C. § 1367(c)(3), **DISMISSED without prejudice** to the Plaintiff's ability to refile them in state court. In accordance with Federal Rule of Civil Procedure 58, final judgment will be entered separately.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 28th day of August 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[4] Exercising supplemental jurisdiction over these state-law claims would be particularly inappropriate here, where Sheriff Israel has moved to dismiss those claims on state-law grounds. *See* Mot. for Judgment on Pleadings at 4–7 (arguing that Counts I and II should be dismissed both because Sheriff Israel is immune to suit under state law and because the Plaintiff failed to abide by certain pre-suit notice requirements imposed by state law). For reasons of fairness and comity, these exclusively state-law questions should be handled by a state court judge.